IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   DEC 1 8 2008   ★

LONG ISLAND OFFICE

MJL:BTR:CPK
F.#2006R01511

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ZOHRAB B. MARASHLIAN and
JOHN ATHANASIOU,
    also known as
    "Johnny A.,"

        Defendants.

- - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

# CR 08 900

I N D I C T M E N T

Cr. No._____
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 982(a)(1),
982(b)(1), 1341, 1343,
1956(h), 2 and 3551
et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

BLOCK, J.

MANN, M.

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.  The Defendants and the Contractors

1. Perini Corporation ("Perini") was a publicly-traded construction service corporation incorporated in New York whose main office was located in Framingham, Massachusetts. Perini's Civil Division provided construction services on large public works projects for government contracting agencies throughout the United States. Perini's Civil Division had offices located in Hawthorne, New York, and at the locations of various construction projects throughout New York.

2.   In or about and between 1998 and 2007, the defendant ZOHRAB B. MARASHLIAN was the President of Perini's Civil Division.

3.   In or about and between 1998 and 2007, the defendant JOHN ATHANASIOU, also known as "Johnny A.," was the Director of Purchasing of Perini's Civil Division and was responsible for preparing and procuring subcontracts and purchase orders for Perini's Civil Division.

4.   John Doe #1, an individual whose identity is known to the Grand Jury, was the owner and President of Land-Site Contracting Corp. ("Land-Site"), a construction service business incorporated in New York with offices located in Jamaica, New York.

5.   V.V.S.S. Company, Inc. ("VVSS") was a construction service business incorporated in New York with offices located in Flushing, New York.

6.   John Doe #2, an individual whose identity is known to the Grand Jury, was the owner and President of Fairview Contracting Corp. ("Fairview"), a construction service business incorporated in New York with offices located in Elmsford, New York.

## II.  The Disadvantaged Business Enterprise Program

7.  In or about 1980, the United States Department of Transportation ("USDOT") issued regulations in connection with a program to increase the participation of minority and disadvantaged business enterprises ("DBEs") in federally-funded public construction contracts (the "DBE Program"). Recipients of USDOT construction grants were required to establish a DBE program, pursuant to which they would set specific goals for the percentage of work to be awarded to DBEs and ensure that good faith efforts were made by general contractors to employ qualified DBE subcontractors.

8.  The New York State Department of Transportation ("NYSDOT") was a recipient of USDOT construction grants and established a DBE Program.

9.  The City of New York was a recipient of USDOT construction grants and established a DBE Program.  The New York City Department of Transportation ("NYCDOT") was an agency of the City of New York.

10.  Under the DBE Programs established by NYSDOT and the City of New York (the "NY-DBE Programs"), general contractors were permitted to count toward the attainment of their DBE percentage goals only funds paid to DBE companies that performed a "commercially useful function" in the execution of a contract.

Under the NY-DBE Programs, and in accordance with federal regulations, a DBE company performed a "commercially useful function" when it: (a) was responsible for the execution of a distinct element of the work of a contract; (b) carried out its responsibilities by actually performing, managing and supervising the work involved; and (c) furnished all supervision, labor, tools, equipment, materials and supplies necessary to perform that distinct element of the work of the contract. 17 N.Y.C.R.R. § 35.9. Pursuant to federal regulations, a DBE did not perform a "commercially useful function" if its role was limited to that of an extra participant in a transaction, contract, or project through which funds were passed in order to obtain the appearance of DBE participation in a contract. 49 C.F.R. § 26.55.

11. In order to participate in the NY-DBE Programs, a company had to be certified as a DBE by the NYSDOT. "DBE certification" meant that a general contractor could receive credit toward the attainment of its DBE percentage goals by subcontracting work to the certified DBE company.

12. Pursuant to State of New York regulations, a DBE subcontractor was prohibited from subcontracting work it was awarded in connection with its DBE status and was required to, among other things: (a) perform the subcontracting work with its own employees and furnish to the contracting governmental agency

a certified payroll showing the wages paid to each employee on the job; (b) manage its own work, including supervising, hiring and firing of employees, and perform all administrative functions using personnel responsible to or employed by the DBE at facilities or locations under the control of the DBE; and (c) negotiate prices, arrange delivery of and pay for materials required for the subcontracting work.  17 N.Y.C.R.R. § 35.9.

III.   The Scheme to Defraud

13.   The defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, devised a scheme to defraud government contracting agencies, to wit: the USDOT, the NYSDOT, the City of New York and the NYCDOT, by falsely representing in proposals and other documents submitted by Perini to those agencies for public works contracts, to wit:  the West Side Highway project in Manhattan, New York, the Long Island Expressway project in Queens, New York, the Brooklyn-Queens Expressway/Williamsburg Bridge connector project in Brooklyn, New York and the Queens Boulevard Bridge/Honeywell Street Bridge project in Long Island City, New York (the "public works contracts"), that Land-Site, VVSS and Fairview (collectively, "the DBE subcontractors") would perform commercially useful functions in satisfaction of the DBE requirements of those public works contracts.

14.   Contrary to the representations made by Perini, when Perini was awarded the public works contracts, MARASHLIAN, ATHANASIOU and others did not have the DBE subcontractors perform commercially useful functions on the public works contracts. Instead, MARASHLIAN, ATHANASIOU and others used non-DBE subcontractors to perform work on the public works contracts that should have been performed by the DBE subcontractors.

15.   It was a part of the scheme to defraud that the defendants ZOHRAB B. MARASHLIAN, JOHN ATHANASIOU, also known as "Johnny A.," and others caused non-DBE subcontractors to list their employees and supervisors on the payrolls of the DBE subcontractors, and order supplies and materials through the DBE subcontractors, to create the appearance that the DBE subcontractors were performing commercially useful functions on the public works contracts.  MARASHLIAN and ATHANASIOU further caused Perini to falsely certify to NYSDOT and NYCDOT that the DBE subcontractors performed DBE subcontract work on the public works contracts when, in truth and fact, as MARASHLIAN and ATHANASIOU well knew and believed, the DBE subcontract work on the public works contracts was performed by non-DBE subcontractors.

16.   It was a further part of the scheme to defraud that, on or about January 1, 1998, Perini awarded Land-Site the

following DBE subcontracts: (a) NYSDOT contract number D257503 for $2,050,000 in landscaping work on the West Side Highway in Manhattan, New York (the "Land-Site West Side Highway subcontract"); (b) NYSDOT contract number D258437 for $5,119,000 in landscaping work on the Long Island Expressway in Queens, New York (the "Land-Site LIE subcontract"); and (c) NYSDOT contract number D258425 for $1,125,219 in landscaping and stone work on the Brooklyn Queens Expressway/Williamsburg Bridge connector project in Brooklyn, New York (the "Land-Site BQE subcontract") (collectively, the "Land-Site subcontracts").

17. It was a further part of the scheme to defraud that, on or about July 1, 1998, Perini awarded VVSS DBE NYSDOT subcontract number D257503 for $3,150,000 in trucking services on the West Side Highway project in Manhattan, New York (the "VVSS subcontract").

18. It was a further part of the scheme to defraud that, on or about January 1, 2000, Perini awarded Fairview the following DBE subcontracts: (a) NYSDOT contract number D258437 for $4,963,589 in concrete and rebar installation work on the Long Island Expressway project in Queens, New York (the "Fairview LIE subcontract"); (b) NYSDOT contract number D258425 for $911,932 in concrete and rebar installation work on the Brooklyn Queens Expressway/Williamsburg Bridge connector project in

8

Brooklyn, New York (the "Fairview BQE subcontract"); and (c) NYCDOT contract number X041.45 for $2,000,000 in concrete and rebar installation work on the Queens Boulevard Bridge/Honeywell Street Bridge project in Long Island City, New York (the "Fairview Queens Boulevard subcontract") (collectively, the "Fairview subcontracts").

19. It was a further part of the scheme to defraud that the DBE subcontractors did not perform "commercially useful functions" for Perini on the Land-Site subcontracts, the VVSS subcontract and the Fairview subcontracts (collectively, the "DBE subcontracts") and the work on the DBE subcontracts was actually performed by non-DBE subcontractors with materials purchased by those non-DBE subcontractors.

20. It was a further part of the scheme to defraud that the non-DBE subcontractors who performed the work on the DBE subcontracts caused the DBE subcontractors to submit false invoices to Perini for materials and work performed by the non-DBE subcontractors (the "false invoices"). In exchange for listing the non-DBE employees on their payrolls and submitting the false invoices to Perini, the DBE subcontractors received fees of between 3% and 5% of the total amounts of the DBE subcontracts.

21. It was a further part of the scheme to defraud

that the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," caused Perini to issue checks to the DBE subcontractors based upon the false invoices, which funds were used to pay the non-DBE subcontractors for the materials purchased and the work performed by the non-DBE subcontractors.

22.   It was a further part of the scheme to defraud that the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," caused the DBE subcontractors to provide signed and certified payroll records ("Certified Payroll Records") to the NYSDOT and the NYCDOT for the DBE subcontracts. The Certified Payroll Records falsely represented that certain employees, whose identities are known to the Grand Jury, were employees of the DBE subcontractors when, in truth and fact, as MARASHLIAN, ATHANASIOU well knew and believed, those employees were actually employed by the non-DBE subcontractors.  Perini relied on the Certified Payroll Records and other documents to claim credit towards Perini's attainment of its DBE percentage goals on the public works contracts.

COUNT ONE
(Conspiracy to Commit Mail Fraud and Wire Fraud)

23.   The allegations contained in paragraphs 1 through 22 are realleged and incorporated as if fully set forth in this paragraph.

24.   On or about and between January 1, 1998 and March 19, 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, knowingly and willfully conspired to devise a scheme and artifice to defraud the USDOT, NYSDOT, the City of New York and the NYCDOT, and to obtain money and property from the USDOT, NYSDOT, the City of New York and the NYCDOT, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to (a) place and cause to be placed in a post office and authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service, and to deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, in violation of Title 18, United States Code, Section 1341, and (b) cause writings, signals, pictures and sounds to be transmitted by means of wire communication in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

25.   In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, MARASHLIAN and ATHANASIOU, together with others,

committed and caused to be committed, among others, the

following:

OVERT ACTS

a.   On or about February 19, 1998, MARASHLIAN and

ATHANASIOU caused Perini to send to the NYSDOT via U.S. mail a

NYSDOT Form AAPHC89, also known as a "d/m/wbe Utilization

Worksheet" (the "NYSDOT Form"), which indicated that Land-Site

would perform landscaping services pursuant to the Land-Site West

Side Highway subcontract.

b.   On or about April 29, 1999, MARASHLIAN and

ATHANASIOU caused John Doe #2 to sign a NYSDOT Form, which

indicated that Fairview would perform concrete and rebar work for

Perini on the Fairview Queens Boulevard subcontract, and to send

the NYSDOT Form via U.S. Mail to the NYCDOT in Albany, New York.

c.   On or about May 16, 2000, MARASHLIAN and

ATHANASIOU caused John Doe #1 to sign a NYSDOT Form, which

indicated that Land-Site would perform work for Perini on the

Land-Site BQE subcontract, and to send the NYSDOT Form via U.S.

Mail to NYSDOT in Albany, New York.

d.   On or about May 24, 2000, MARASHLIAN and

ATHANASIOU caused Perini to send via facsimile documents

concerning the Land-Site West Side Highway subcontract from

Perini's offices in Framingham, Massachusetts to NYSDOT in

Albany, New York.

e.   On or about June 20, 2000, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile documents concerning the Land-Site West Side Highway subcontract from John Doe #1 in Atlantic City, New Jersey to Perini's offices in Hawthorne, New York.

f.   On or about September 16, 2000, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile invoices for landscaping materials for the Land-Site West Side Highway subcontract from Atlantic City, New Jersey to Perini's offices in Manhattan, New York.

g.   On or about November 7, 2000, MARASHLIAN and ATHANASIOU caused Land-Site to send a letter via U.S. Mail to Perini in Manhattan, New York that requested a change order for the Land-Site West Side Highway subcontract.

h.   On or about January 23, 2001, MARASHLIAN and ATHANASIOU caused John Doe #2 to sign a NYSDOT Form, which indicated that Fairview would furnish and install rebar for Perini on the Fairview LIE subcontract, and to send the NYSDOT Form via U.S. Mail to NYSDOT in Queens, New York.

i.   On or about February 7, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile invoices concerning labor costs for the Land-Site West Side Highway

subcontract from John Doe #1 in Atlantic City, New Jersey to Perini's offices in Manhattan, New York.

j.  On or about March 19, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile an invoice for landscaping materials for the Land-Site West Side Highway subcontract from Atlantic City, New Jersey to Perini's offices in Manhattan, New York.

k.  On or about April 25, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile an invoice concerning landscaping materials for the Land-Site West Side Highway subcontract from John Doe #1 in Atlantic City, New Jersey to Perini's offices in Manhattan, New York.

l.  On or about May 21, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile an inventory of landscaping materials for the Land-Site West Side Highway subcontract from a business in Columbus, New Jersey to Land-Site's offices in Queens, New York.

m.  On or about July 26, 2001, MARASHLIAN and ATHANASIOU caused Perini to send via facsimile insurance documents for the Land-Site West Side Highway subcontract from Perini's offices in Hawthorne, New York to Perini's offices in Framingham, Massachusetts.

n.  On or about December 6, 2001, MARASHLIAN and

14

ATHANASIOU caused Perini to send via facsimile insurance documents for the Land-Site West Side Highway subcontract from Perini's offices in Hawthorne, New York to Perini's offices in Framingham, Massachusetts.

o.   On or about December 6, 2001, MARASHLIAN and ATHANASIOU caused Perini to send Land-Site via U.S. mail a check drawn on a corporate account of Perini at Fleet Bank (the "Perini Account") that was made payable to the order of "Land-Site" in the amount of $66,500.

p.   On or about January 3, 2002, MARASHLIAN and ATHANASIOU caused Perini to send Land-Site via U.S. mail a check drawn on the Perini Account that was payable to the order of "Land-Site" in the amount of $91,120.00.

q.   On or about January 31, 2002, MARASHLIAN and ATHANASIOU caused Perini to send Land-Site via U.S. mail a check drawn on the Perini Account that was made payable to the order of "Land-Site" in the amount of $574,825.53.

r.   On or about March 7, 2002, MARASHLIAN and ATHANASIOU caused Perini to send Land-Site via U.S. mail a check drawn on the Perini Account that was made payable to the order of "Land-Site" in the amount of $87,840.22.

s.   On or about March 26, 2002, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile invoices

concerning landscaping materials for the Land-Site West Side Highway subcontract from John Doe #1 in Atlantic City, New Jersey to Land-Site's offices in Queens, New York.

t.   On or about April 2, 2002, MARASHLIAN and ATHANASIOU caused Land-Site to send via facsimile documents concerning payment for landscaping materials for the Land-Site West Side Highway subcontract from John Doe #1 in Atlantic City, New Jersey to Land-Site's offices in Queens, New York.

u.   On or about April 8, 2002, MARASHLIAN and ATHANASIOU caused Perini to send Land-Site via U.S. mail a check drawn on the Perini Account that was made payable to the order of "Land-Site" in the amount of $138,476.45.

v.   On or about April 11, 2002, MARASHLIAN and ATHANASIOU caused Perini to send Land-Site via Federal Express a check drawn on the Perini Account that was made payable to the order of "Land-Site" in the amount of $32,726.07.

w.   On or about November 11, 2002, MARASHLIAN and ATHANASIOU caused Horticultural Associates of Rochester, Inc. to send via U.S. Mail a statement of invoices concerning landscaping materials to Land-Site in Queens, New York.

x.   On or about March 19, 2003, MARASHLIAN and ATHANASIOU caused NYSDOT Forms for NYSDOT project number D258437, the Long Island Expressway project in Queens, New York, to be

sent via U.S. Mail from Perini's offices in Hawthorne, New York

to the NYSDOT in Queens, New York.

(Title 18, United States Code, Sections 371 and 3551 <u>et</u>

<u>seq.</u>)

COUNTS TWO THROUGH SIX
(Mail Fraud)

26.   The allegations in paragraphs 1 through 22 are

realleged and incorporated as if fully set forth in this

paragraph.

27.   On or about and between January 3, 2002 and April

11, 2002, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants ZOHRAB

B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.,"

together with others, knowingly and intentionally devised a

scheme and artifice to defraud the USDOT, the NYSDOT, the City of

New York and the NYCDOT, and to obtain money and property from

the USDOT, the NYSDOT, the City of New York and the NYCDOT, by

means of materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing

and attempting to execute such scheme and artifice, placed and

caused to be placed in a post office and authorized depositories

for mail matter, matters and things to be sent and delivered by

the United States Postal Service, and deposited and caused to be

deposited matters and things to be sent and delivered by private

and commercial interstate carriers, to wit: the checks sent via

U.S Mail and Federal Express on or about the dates listed below:

|   |   |   |   |   |
|---|---|---|---|---|
| 2 | January 3, 2002 | $91,120.00 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |
| 3 | January 31, 2002 | $574,825.53 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |
| 4 | March 7, 2002 | $87,840.22 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |
| 5 | April 8, 2002 | $138,476.45 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |
| 6 | April 11, 2002 | $32,726.07 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |

(Title 18, United States Code, Sections 1341, 2 and

3551 et seq.)

### COUNTS SEVEN THROUGH SIXTEEN
(Wire Fraud)

28.  The allegations in paragraphs 1 through 22 are

realleged and incorporated as if fully set forth in this

paragraph.

29.  On or about and between June 20, 2000 and April 2,

2002, both dates being approximate and inclusive, within the

Eastern District of New York, the Southern District of New York and elsewhere, the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, knowingly and intentionally devised a scheme and artifice to defraud the USDOT and NYSDOT, and to obtain money and property from the USDOT and NYSDOT, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute such scheme and artifice, caused writings, signals, pictures and sounds to be transmitted by means of wire communication in interstate and foreign commerce, to wit: the following documents sent via facsimile on or about the dates listed below:

| | | | | |
|---|---|---|---|---|
| 7 | June 20, 2000 | Contract Documents | Atlantic City, N.J. | Perini, Hawthorne, New York |
| 8 | September 16, 2000 | Landscaping Documents | Atlantic City, N.J. | Perini, New York, New York |
| 9 | February 7, 2001 | Labor Cost Documents | Atlantic City, N.J. | Perini, New York, New York |
| 10 | March 19, 2001 | Landscaping Documents | Atlantic City, N.J. | Perini, New York, New York |
| 11 | April 25, 2001 | Landscaping Documents | Atlantic City, N.J. | Perini, New York, New York |

| | | | | |
|---|---|---|---|---|
| 12 | May 21, 2001 | Landscaping Documents | Columbus, New Jersey | Land-Site, Queens, New York |
| 13 | July 26, 2001 | Insurance Documents | Perini, Hawthorne, N.Y. | Perini, Framingham, Mass. |
| 14 | December 6, 2001 | Insurance Documents | Perini, Hawthorne, N.Y. | Perini, Framingham, Mass. |
| 15 | March 26, 2002 | Landscaping Documents | Atlantic City, New Jersey | Land-Site, Queens, New York |
| 16 | April 2, 2002 | Landscaping Documents | Atlantic City, New Jersey | Land-Site, Queens, New York |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT SEVENTEEN
(Money Laundering Conspiracy)

30.    The allegations contained in paragraphs 1 through 22 are realleged and incorporated as if fully set forth in this paragraph.

31.    On or about and between January 1, 1998 and March 19, 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, knowingly and intentionally conspired to

conduct financial transactions affecting interstate commerce,

which involved the proceeds of specified unlawful activity, to

wit: mail fraud, in violation of Title 18, United States Code,

Section 1341, and wire fraud, in violation of Title 18, United

States Code, Section 1343, knowing that the property involved in

the financial transactions represented the proceeds of some form

of unlawful activity (a) with the intent to promote the carrying

on of the specified unlawful activity, in violation of Title 18,

United States Code, Section 1956(a)(1)(A)(i), and (b) knowing

that the transactions were designed in whole and in part to

conceal and disguise the nature, the location, the source, the

ownership and the control of the proceeds of the specified

unlawful activity, in violation of Title 18, United States Code,

Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and

3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION FOR
## COUNTS ONE THROUGH SIXTEEN

32.  The United States hereby gives notice to the

defendants charged in Counts One through Sixteen, that, upon

their conviction of any such offenses, the government will seek

forfeiture in accordance with Title 18, United States Code,

Section 981(a)(1)(C) and Title 28, United States Code, Section

21

2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to a sum of money equal to at least approximately $19,381,740 in United States currency.

33.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the

22

forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION FOR COUNT SEVENTEEN

34.   The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Seventeen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in the conspiracy to violate Title 18, United States Code, Section 1956 and all property traceable to such property as a result of the defendants conviction of such offense, including but not limited to, a sum of money equal to at least approximately $19,381,740 in United States currency.

35.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.  has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982(b)(1), to seek forfeiture of any
other property of the defendant up to the value of the
forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and
982(b)(1))

A TRUE BILL

FOREPERSON

BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136