JMM:BTR
F.#2006R01511

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  SEP 23 2010  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ZOHRAB B. MARASHLIAN and
JOHN ATHANASIOU,
    also known as
    "Johnny A.,"

        Defendants.

- - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 08-900(S-1)(FB)
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 982(a)(1),
982(b)(1), 1341, 1343,
1956(h), 2 and 3551
et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

        At all times relevant to this Indictment, unless otherwise indicated:

I.  The Defendants and the Contractors

        1.  Perini Corporation ("Perini") was a publicly-traded construction service corporation incorporated in Massachusetts, whose main office was located in Framingham, Massachusetts. Perini's Civil Division provided construction services on large public works projects for government contracting agencies throughout the United States. Perini's Civil Division had offices located in Hawthorne and Peekskill, New York, and at the locations of various construction projects throughout New York.

2.   In or about and between 1993 and 2007, the defendant ZOHRAB B. MARASHLIAN was President of Perini's Civil Division.

3.   In or about and between 1993 and 2007, the defendant JOHN ATHANASIOU, also known as "Johnny A.," was the Director of Purchasing of Perini's Civil Division and was responsible for preparing and procuring subcontracts and purchase orders for Perini's Civil Division.

4.   John Doe #1, an individual whose identity is known to the Grand Jury, was the owner and President of Land-Site Contracting Corp. ("Land-Site"), a construction service business incorporated in New York with an office located in Jamaica, New York.

5.   V.V.S.S. Company, Inc. ("VVSS"), was a construction service business incorporated in New York with offices located in Flushing, New York.

6.   John Doe #2, an individual whose identity is known to the Grand Jury, was the owner and President of Fairview Contracting Corp. ("Fairview"), a construction service business incorporated in New York with an office located in Elmsford, New York.

II.  The Disadvantaged Business Enterprise Program

      7.  In or about 1980, the United States Department of Transportation ("USDOT") issued regulations in connection with a program to increase the participation of minority and disadvantaged business enterprises ("DBEs") in federally-funded public construction contracts (the "DBE Program").  Recipients of USDOT construction grants were required to establish a DBE program, pursuant to which they would set specific goals for the percentage of work to be awarded to DBEs and ensure that good faith efforts were made by general contractors to employ qualified DBE subcontractors.

      8.  The New York State Department of Transportation ("NYSDOT") was a recipient of USDOT construction grants and established a DBE Program.  Within its DBE programs, NYSDOT also instituted a program for state aid construction projects called the Minority and Woman Business Enterprise Program.

      9.  The City of New York was a recipient of USDOT construction grants and established a DBE Program.  The New York City Department of Transportation ("City Transportation Department") and New York City Department of Environmental Protection ("City Environmental Department") were agencies of the City of New York.

4

10.   Under the DBE Programs established by NYSDOT and the City of New York (the "NY-DBE Programs"), general contractors were permitted to count toward the attainment of their DBE percentage goals only funds paid to DBE companies that performed a "commercially useful function" in the execution of a contract. Under the NY-DBE Programs, and in accordance with federal regulations, a DBE company performed a "commercially useful function" when it: (a) was responsible for the execution of a distinct element of the work of a contract; (b) carried out its responsibilities by actually performing, managing and supervising the work involved; and (c) furnished all supervision, labor, tools, and equipment necessary to perform that distinct element of the work of the contract.   17 N.Y.C.R.R. § 35.9 (1998), NYSDOT Standard Specifications § 102-22.   Pursuant to federal and New York State regulations, a DBE did not perform a "commercially useful function" if its role was limited to that of an extra participant in a transaction, contract, or project through which funds were passed in order to obtain the appearance of DBE participation in a contract.   49 C.F.R. § 26.55, 17 N.Y.C.R.R. § 35.9, and NYSDOT Standard Specifications § 102-22.

11.   In order to participate in the NY-DBE Programs, a company had to be certified as a DBE by NYSDOT or other authorized state agency.   "DBE certification" meant that a

general contractor could receive credit toward the attainment of its DBE percentage goals by subcontracting work to the certified DBE company.

12. Under the NY-DBE program, a DBE subcontractor was prohibited from subcontracting work it was awarded in connection with its DBE status, and was required to, among other things: (a) perform the subcontracting work with its own employees and furnish to the contracting governmental agency a certified payroll showing the wages paid to each employee on the job; (b) manage its own work, including supervising, hiring and firing of employees, and perform all administrative functions using personnel responsible to or employed by the DBE at facilities or locations under the control of the DBE; and (c) negotiate prices, arrange delivery of and pay for materials required for the subcontracting work. 17 N.Y.C.R.R. § 35.9.

III. The Scheme to Defraud

13. The defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, devised a scheme to defraud government contracting agencies, to wit: the USDOT, the NYSDOT, the City of New York, the City Transportation Department and the City Environmental Department, by falsely representing in proposals and other documents submitted by Perini to those agencies for public works contracts,

to wit:  the 39 Street Bridge project in Queens, New York, the (Vortex) Water Purification Plant in Queens, New York, the West Side Highway project in Manhattan, New York, the Long Island Expressway/Cross Island Parkway project in Queens, New York, the Brooklyn-Queens Expressway/Williamsburg Bridge connector project in Brooklyn, New York, and the Queens Boulevard Bridge/Honeywell Street Bridge project in Long Island City, New York (the "public works contracts"), that Land-Site, VVSS, Fairview and other DBE subcontractors (collectively, "the DBE subcontractors") would perform commercially useful functions in satisfaction of DBE requirements on the public works contracts.

14.  Contrary to the representations made by Perini, when Perini was awarded the public works contracts, MARASHLIAN, ATHANASIOU and others did not have the DBE subcontractors perform commercially useful functions on the public works contracts. Instead, MARASHLIAN, ATHANASIOU and others used non-DBE subcontractors to perform work on the public works contracts that should have been performed by the DBE subcontractors.

15.  It was a part of the scheme to defraud that the defendants ZOHRAB B. MARASHLIAN, JOHN ATHANASIOU, also known as "Johnny A.," and others caused non-DBE subcontractors to list their employees and supervisors on the payrolls of the DBE subcontractors, order supplies and materials through the DBE

subcontractors and bill services provided by the non-DBE to Perini through a DBE subcontractor, all to create the false appearance that the DBE subcontractors were performing commercially useful functions on the public works contracts. MARASHLIAN and ATHANASIOU further caused Perini to falsely certify to NYSDOT and NYCDOT that the DBE subcontractors performed DBE subcontract work on the public works contracts when, in truth and fact, as MARASHLIAN and ATHANASIOU well knew and believed, the DBE subcontract work on the public works contracts was performed by non-DBE subcontractors.

16.    It was further part of the scheme to defraud that, on or about and between February 1, 1998 and October 31, 2002, the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," caused Perini to submit forms to the NYSDOT proposing to award Land-Site the following DBE subcontracts: (a) NYSDOT contract number D257503 for $2,050,000 in landscaping work on the West Side Highway in Manhattan, New York (the "Land-Site West Side Highway subcontract"); (b) NYSDOT contract number D258437 for $5,119,000 in landscaping work on the Long Island Expressway in Queens, New York (the "Land-Site LIE subcontract"); and (c) NYSDOT contract number D258425 for $1,125,219 in landscaping and stone work on the Brooklyn Queens Expressway/Williamsburg Bridge connector project, Brooklyn, New

8

York (the "Land-Site BQE subcontract") (collectively, the "Land-Site subcontracts").

17.   It was further part of the scheme to defraud that, on or about and between June 18, 1998 and October 8, 2002, MARASHLIAN and ATHANASIOU caused Perini to submit required forms to the NYSDOT and the NYCDOT proposing to award VVSS DBE NYSDOT subcontract number D257503 for $3,150,000 in trucking services on the West Side Highway project in Manhattan, New York (the "VVSS West Side Highway contract"), and (b) a demolition subcontract for $600,000 on the Queens Boulevard Bridge/Honeywell Bridge project in Long Island City, New York NYCDOT contract HBQ-432/448.

18.   It was further part of the scheme to defraud that, on or about and between April 29, 1999 and March 31, 2001, MARASHLIAN and ATHANASIOU caused Perini to submit forms to the contracting agency proposing to award Fairview the following DBE subcontracts: (a) NYSDOT contract number D258437 for $4,963,589 in concrete and rebar installation work on the Long Island Expressway project in Queens, New York (the "Fairview LIE subcontract"); (b) NYSDOT contract number D258425 for $911,932 in concrete and rebar installation work on the Brooklyn Queens Expressway/Williamsburg Bridge connector project in Brooklyn, New York (the "Fairview BQE subcontract"); and (c) NYCDOT contract

number HBQ-432/448 for $2,000,000 in concrete and rebar installation work on the Queens Boulevard Bridge/Honeywell Street Bridge project in Long Island City, New York (the "Fairview Queens Boulevard subcontract") (collectively, the "Fairview subcontracts").

19.   It was further part of the scheme to defraud that the DBE subcontractors did not perform "commercially useful functions" for Perini on the Land-Site subcontracts, the VVSS subcontracts and the Fairview subcontracts (collectively, the "DBE subcontracts").

20.   It was further part of the scheme to defraud that the non-DBE subcontractors who performed the work on the DBE subcontracts listed their employees on the payrolls of the DBE subcontractors and had the DBE subcontractors submit to Perini invoices for materials and work performed by the non-DBE subcontractors (the "false invoices").  The DBE subcontractors agreed to receive fees of up to 5% of the total amounts of the DBE subcontracts for listing the employees on their payrolls and submitting the invoices to Perini.

21.   It was further part of the scheme to defraud that the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," caused Perini to issue checks to the DBE subcontractors based upon the false invoices, which were used to

10

pay the non-DBE subcontractors for the materials provided and the work performed by the non-DBE subcontractors.

22. It was further part of the scheme to defraud that the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," caused the DBE subcontractors to provide certified payroll records ("Certified Payroll Records") to the NYSDOT and the NYCDOT for the DBE subcontracts. The Certified Payroll Records falsely represented that certain employees, whose identities are known to the Grand Jury, were employees of the DBE subcontractors when, in truth and fact, as MARASHLIAN, ATHANASIOU well knew and believed, those employees were actually employed by the non-DBE subcontractors. Perini relied on the Certified Payroll Records and other documents to claim credit towards Perini's attainment of its DBE percentage goals on the public works contracts.

23. It was further part of the scheme to defraud that the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," would cause the checks, invoices, certified payrolls and other documents described above needed to further the scheme to be mailed via United States Postal Service and by commercial interstate carrier.

24. It was further part of the scheme to defraud that the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also

11

known as "Johnny A.," received substantial benefits in the form
of salary, incentive payments, bonuses and stock options from
Perini, and cash kickbacks and other benefits from
subcontractors.

COUNT ONE
(Conspiracy to Commit Mail Fraud and Wire Fraud)

25. The allegations contained in paragraphs 1 through
24 are realleged and incorporated as if fully set forth in this
paragraph.

26. On or about and between January 1, 1993 and March
30, 2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ZOHRAB
B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.,"
together with others, did knowingly and intentionally conspire to
devise a scheme and artifice to defraud USDOT, NYSDOT, the State
and City of New York, the City Transportation Department and the
City Environmental Department and to obtain money and property
from USDOT, NYSDOT, the State and City of New York, the City
Transportation Department and the City Environmental Department,
by means of materially false and fraudulent pretenses,
representations and promises, and for the purpose of executing
such scheme and artifice, to (a) place and cause to be placed in
a post office and authorized depositories for mail matter,

matters and things to be sent and delivered by the United States

Postal Service, and to deposit and cause to be deposited matters

and things to be sent and delivered by private and commercial

interstate carriers, contrary to Title 18, United States Code,

Section 1341, and (b) cause writings, signals, pictures and

sounds to be transmitted by means of wire communication in

interstate and foreign commerce, contrary to Title 18, United

States Code, Section 1343.

27.  In furtherance of the conspiracy and to effect its

objectives, within the Eastern District of New York and

elsewhere, MARASHLIAN and ATHANASIOU, together with others,

committed and caused to be committed, among others, the

following:

<u>OVERT ACTS</u>

a.  In or about 1994, MARASHLIAN and ATHANASIOU

solicited a trucking broker to submit invoices to Perini on a

DBE's letterhead, which would falsely represent that the DBE had

performed specified work on the (Vortex) Water Purification Plant

in Queens, New York.

b.  In or about 1994, MARASHLIAN and ATHANASIOU

solicited a rebar contractor to mail invoices to Perini on a

DBE's letterhead, which would falsely represent that the DBE had

13

performed specified work on the (Vortex) Water Purification Plant in Queens, New York.

c. In or about 1997, MARASHLIAN and ATHANASIOU solicited a rebar subcontractor to mail invoices to Perini for work performed on a DBE's letterhead, which would falsely represent that the DBE had performed specified work on the 39 Street Bridge project in Queens, New York.

d. On or about February 19, 1998, MARASHLIAN and ATHANASIOU caused Perini to mail to the NYSDOT, "NYSDOT Form AAPHC89," also known as a "DBE Utilization Worksheet" (the "NYSDOT Form"), which falsely represented that Land-Site would perform landscaping services pursuant to the Land-Site West Side Highway subcontract.

e. On or about July 1, 1998, MARASHLIAN and ATHANASIOU caused Perini to mail to the NYSDOT a NYSDOT Form, which falsely represented that VVSS Co., Inc., would perform subcontract services for Perini on the Westside Highway subcontract.

f. On or about April 29, 1999, MARASHLIAN and ATHANASIOU caused Perini to mail a NYSDOT Form to the City Transportation Department in New York, New York, which falsely represented that Fairview would perform concrete and rebar work for Perini on the Fairview Queens Boulevard subcontract.

g.   On or about May 6, 1999, MARASHLIAN and ATHANASIOU caused Perini to mail from Perini's offices in Massachusetts to Perini's offices in New York a check drawn on the corporate bank account of Perini payable to the order of V.V.S.S. Co., Inc. and BCM Industries in the amount of $125,000.

h.   On or about May 10, 1999, MARASHLIAN and ATHANASIOU caused Perini to mail to the NYCDOT, the NYSDOT Form, which indicated that Fairview, VVSS and H.M. Contracting would perform subcontract services pursuant to the Queens Boulevard subcontract.

i.   On or about September 7, 1999, MARASHLIAN and ATHANASIOU caused Perini to mail, from Perini's offices in Massachusetts to Perini's offices in New York, a check drawn on the Perini bank account payable to the order of "V.V.S.S. Co., Inc. and BCM Industries" in the amount of $127,248.

j.   On or about May 19, 2000, MARASHLIAN and ATHANASIOU caused Perini to send, via facsimile, from Perini's offices in Massachusetts to NYSDOT in Albany, New York, the NYSDOT Form, which falsely represented that Land-Site would perform work for Perini on the Land-Site BQE subcontract.

k.   On or about May 24, 2000, MARASHLIAN and ATHANASIOU caused Perini to send, via facsimile, from Perini's

15

offices in Massachusetts to NYSDOT in Albany, New York documents concerning the Land-Site BQE subcontract.

l.   On or about September 16, 2000, MARASHLIAN and ATHANASIOU caused Land-Site to send, via facsimile, invoices for landscaping material for the Land-Site West Side Highway subcontract from Atlantic City, New Jersey to Perini's offices in New York.

m.   On or about November 7, 2000, MARASHLIAN and ATHANASIOU caused Land-Site to mail a letter to Perini in New York that requested a change order for the Land-Site West Side Highway subcontract.

o.   On or about January 9, 2001, MARASHLIAN and ATHANASIOU caused Perini to mail, from Perini's offices in Massachusetts to Perini's offices in New York, a check drawn on the Perini bank account payable to the order of Fairview Contracting Corp. in the amount of $81,381.88.

p.   On or about January 23, 2001, MARASHLIAN and ATHANASIOU caused Perini to mail a NYSDOT Form AAPHC89, Part 2, also known as an "Approval to Subcontract" ("NYSDOT Form 2") to NYSDOT in Queens, which falsely represented that Fairview would perform subcontract services for Perini on the Fairview LIE subcontract.

q.  On or about February 7, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send, via facsimile, invoices concerning labor costs for the Land-Site West Side Highway subcontract from Atlantic City, New Jersey to Perini's offices in New York.

r.  On or about February 8, 2001, MARASHLIAN and ATHANASIOU caused Perini to mail, from Perini's offices in Massachusetts to Perini's offices in New York, a check drawn on the Perini bank account payable to the order of Fairview Contracting Corp. in the amount of $75,000.

s.  On or about March 1, 2001, MARASHLIAN and ATHANASIOU caused Perini to mail to the NYSDOT a NYSDOT Form 2, which falsely represented that Fairview would perform subcontract services for Perini on the LIE subcontract.

t.  On or about March 19, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send, via facsimile, an invoice for landscaping material for the Land-Site West Side Highway subcontract from Atlantic City, New Jersey to Perini's offices in New York.

u.  On or about April 25, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send, via facsimile, an invoice concerning landscaping materials for the Land-Site West Side

Highway subcontract from Atlantic City, New Jersey to Perini's offices in New York.

v.   On or about May 21, 2001, MARASHLIAN and ATHANASIOU caused Land-Site to send, via facsimile, an inventory of landscaping materials for the Land-Site LIE subcontract from a business in Columbus, New Jersey to Perini's offices in Massachusetts.

w.   On or about July 26, 2001, MARASHLIAN and ATHANASIOU caused Perini to send, via facsimile, insurance documents for the Land-Site West Side Highway subcontract from Perini's offices in New York to Perini's offices in Massachusetts.

x.   On or about December 6, 2001, MARASHLIAN and ATHANASIOU caused Perini to send, via facsimile, insurance documents for the Land-Site West Side Highway subcontract from Perini's offices in New York to Perini's offices in Massachusetts.

y.   On or about December 6, 2001, MARASHLIAN and ATHANASIOU caused Perini to mail from Perini's offices in Massachusetts to Perini's offices in New York a check drawn on the Perini bank account payable to the order of Land-Site in the amount of $66,500.

z.   On or about January 31, 2002, MARASHLIAN and

18

ATHANASIOU caused Perini to mail Land-Site a check drawn on the Perini bank account that was made payable to the order of Land-Site in the amount of $574,825.53.

aa.   On or about February 14, 2002, MARASHLIAN and ATHANASIOU caused Perini to mail, from Perini's offices in Massachusetts to Perini's office in New York, a check drawn on the Perini bank account payable to the order of Fairview Contracting Corp. in the amount of $79,940.19.

bb.   On or about March 26, 2002, MARASHLIAN and ATHANASIOU caused Land-Site to send, via facsimile, an invoice concerning landscaping material for the Land-Site West Side Highway subcontract from Atlantic City, New Jersey to Land-Sites offices in Queens, New York.

cc.   On or about April 2, 2002, MARASHLIAN and ATHANASIOU caused Land-Site to send, via facsimile, documents concerning payment for landscaping material for the Land-Site West Side Highway subcontract from Atlantic City, New Jersey to Land-Sites offices in Queens, New York.

dd.   On or about April 8, 2002, MARASHLIAN and ATHANASIOU caused Perini to mail Land-Site a check drawn on the Perini bank account that was made payable to the order of Land-Site in the amount of $138,476.45.

ee. On or about April 16, 2002, MARASHLIAN and ATHANASIOU caused Perini to mail Land-Site via Federal Express a check drawn on the Perini bank account that was made payable to the order of Land-Site in the amount of $32,726.07.

ff. On or about November 11, 2002, MARASHLIAN and ATHANASIOU caused Horticultural Associates of Rochester, Inc. to mail a statement of invoices concerning landscaping materials to Land-Site in Queens, New York.

gg. On or about February 4, 2003, MARASHLIAN and ATHANASIOU caused NYSDOT Forms for NYSDOT project number D258437, the Long Island Expressway project in Queens, New York, to be mailed from Perini's offices in New York to the NYSDOT in Queens, New York.

hh. On or about November 20, 2003, MARASHLIAN and ATHANASIOU caused Perini to mail from Perini's offices in Massachusetts to Perini's offices in New York a check drawn on the Perini bank account payable to the order of Fairview Contracting Corp. in the amount of $35,479.46.

ii. On or about February 26, 2004, MARASHLIAN and ATHANASIOU caused Perini to mail from Perini's offices in Massachusetts to Perini's offices in New York a check drawn on the Perini bank account payable to the order of Fairview Contracting Corp. in the amount of $6,754.64.

jj. On or about January 17, 2006, MARASHLIAN and ATHANASIOU caused Perini to mail from Perini's offices in Massachusetts to Perini's offices in New York a check drawn on the Perini bank account payable to the order of Land-Site in the amount of $32,306.02.

kk. On or about March 20, 2007, MARASHLIAN and ATHANASIOU caused Perini to mail from Perini's offices in Massachusetts to Perini's offices in New York a check drawn on the Perini bank account payable to the order of Land-Site in the amount of $38,644.

(Title 18, United States Code, Sections 371, 1343 and 3551 et seq.)

## COUNTS TWO THROUGH FOUR
### (Mail Fraud)

28. The allegations in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

29. On or about and between January 31, 2002 and April 11, 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, did knowingly and willfully devise a scheme and artifice to defraud the USDOT and the NYSDOT and to obtain

21

money and property from the USDOT and the NYSDOT, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute such scheme and artifice, cause to be placed in a post office and authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service and commercial carriers according to the directions thereon, to wit: the checks mailed via U.S mail and commercial carrier on or about the dates listed below:

| Count | Approximate Date | Check | Sent From | Sent To |
|-------|------------------|-------|-----------|---------|
| 2 | Jan. 31, 2002 | $574,825.53 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |
| 3 | April 8, 2002 | $138,476.45 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |
| 4 | April 11, 2002 | $32,726.07 | Perini, Framingham, Massachusetts | Land-Site, Queens, New York |

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

## COUNTS FIVE AND SIX
### (Wire Fraud)

30. The allegations in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

31.   On or about and between March 26, 2002 and April 2, 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, did knowingly and intentionally devise a scheme and artifice to defraud USDOT and NYSDOT, and to obtain money and property from the USDOT and NYSDOT, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute such scheme and artifice, cause writings, signals, pictures and sounds to be transmitted by means of wire communication in interstate and foreign commerce, to wit: the following documents sent via facsimile on or about the dates listed below:

| Count | Approximate Date | Document | Sent From | Sent To |
|-------|------------------|----------|-----------|---------|
| 5 | March 26, 2002 | Landscaping Documents | Atlantic City, New Jersey | Land-Site, Queens, New York |
| 6 | April 2, 2002 | Landscaping Documents | Atlantic City, New Jersey | Land-Site, Queens, New York |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT SEVEN
### (Money Laundering Conspiracy)

32.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

33.   On or about and between January 1, 1994 and March 30, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU, also known as "Johnny A.," together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, which involved the proceeds of specified unlawful activity, to wit: mail fraud, contrary to Title 18, United States Code, Section 1341, and wire fraud, contrary to Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity,

contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION FOR COUNTS ONE THROUGH SIX

34.    The United States hereby gives notice to the defendants charged in Counts One through Six, that, upon their convictions of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2361(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to a sum of money equal to at least approximately $19,381,740 in United States currency.

35.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2361(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION FOR COUNT SEVEN

36.   The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Nine, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in the conspiracy to violate Title 18, United States Code, Section 1956 and all property traceable to such property as a result of the defendants conviction of such offense, including but not limited to, a sum of money equal to at least approximately $19,381,740 in United States currency.

26

37.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1))

A TRUE BILL

_Susan Stinoberg_
FOREPERSON

_Loretta E. Lynch_
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

### ZOHRAB B. MARASHLIAN and JOHN ATHANASIOU,

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 981 (a) (1) (C), 982 (a) (1), 982 (b) (1), 1341, 1343, 1956 (h) 2 and 3551 et seq.; T. 21, U.S.C., § 853 (p); T. 28, U.S.C., § 2461 (c))

*A true bill.*

_Susan Stinsberg_____
                                                        *Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 19* _____

                                                        *Clerk*

*Bail, $* _____

BURTON T. RYAN, AUSA, (631) 715-7853